IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CONTINENTAL CASUALTY INSURANCE COMPANY, an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Case No. 07-913-KI |
| vs. | ) ) | OPINION AND ORDER |
| ZURICH AMERICAN INSURANCE COMPANY, a New York corporation; TCR PACIFIC NORTHWEST CONSTRUCTION 2002 LIMITED PARTNERSHIP, a foreign limited partnership; and SAFWAY SERVICES, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

David E. Prange
Aaron C. Denton
Prange Law Group LLC
111 Southwest Fifth Avenue, Suite 2120
Portland, Oregon 97204

        Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

Thomas W. Brown
Robert E. Sabido
Cosgrave Vergeer Kester LLP
805 SW Broadway, 8th Floor
Portland, Oregon  97205

      Attorneys for Defendant Zurich American Insurance Company

James P. Murphy
Lybeck Murphy, LLP
7525 SE 24th Street, Suite 500
Mercer Island, Washington  98040-2334

      Attorney for Defendant TCR Pacific Northwest Construction 2002
          Limited Partnership

John L. Langslet
Ismail M. Pekin
Martin Bischoff Templeton Langslet & Hoffman, LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon  97204

      Attorneys for Defendant Safway Services, Inc.

KING, Judge:

      This is an insurance coverage case that arose out of an accident that occurred at a building project (the "Merrick") where a subcontractor's employee was injured.  The dispute, between two contractors and two insurers, is over who is responsible for the defense costs in the underlying personal injury suit.  Before the court are Plaintiff Continental Casualty Insurance Company's Motion for Summary Judgment (#52), Defendant Zurich American Insurance Company's Motions for Summary Judgment and Alternative Motions for Partial Summary Judgment (#58), Defendant TCR's Motion for Summary Judgment (#64), and Defendant Safway Services, Inc.'s Motions for Summary Judgment (#68).  For the reasons below, I conclude that Safway has

Page 2 - OPINION AND ORDER

breached its contract to purchase insurance and must pay the defense costs incurred in the underlying action.

## FACTS

TCR Pacific Northwest Construction 2002 Limited Partnership ("TCR") was the general contractor on the Merrick apartment complex project. TCR contracted with Performance Contracting, Inc. ("PCI") for framing and exterior stucco work at the Merrick. PCI contracted with Safway Services, Inc. ("Safway") to erect scaffolding at the Merrick. TCR, PCI, and Safway are unrelated entities.

The TCR/PCI subcontract states:

A. Subcontractor shall have the following manuscript endorsement specifically endorsed to their commercial Liability policy and to any Umbrella Liability or Excess Liability policies covering this project:

"It is hereby agreed and understood that Contractor/Owner/Owner's members/Lender are hereby added as additional insureds. The coverage afforded the additional insureds under this policy shall be primary insurance. If the additional insureds have other insurance which is applicable to the loss, such other insurance shall be on an excess or contingent basis. The amount of the Subcontractor's liability under this policy shall not be reduced by the existence of other insurance."

. . .

. . . Subcontractor shall require all of its Subcontractors to comply with the foregoing insurance requirements.

Denton Decl. Ex. A at 2.

Safway contracted to maintain and pay for commercial general liability ("CGL") coverage of at least $1 million per occurrence and $2 million aggregate, with PCI and TCR named as additional insureds. Sabido Decl. Ex. F at 2. The PCI/Safway subcontract states:

Prior to beginning work, [Safway] shall provide [PCI] with evidence of such insurance through a certificate on the standard ACORD form and the agreement and endorsement(s) of its insurance carrier to the effect that such insurance:  (a) is in effect; (b) is occurrence based and not a claims made type policy; (c) will not be canceled or changed without thirty (30) days prior written notice to [PCI]; (d) that [PCI], [TCR], Owner and its architect are named additional insureds; (e) that such coverage is primary rather than contributory to any insurance provided by Owner, [TCR], or [PCI]; and (f) that such carrier waives subrogation against [PCI], [TCR], Owner and its architect and their respective agents or employees, with respect to any loss covered by the insurance.

Id.

The PCI/Safway subcontract also states:

4.  [Safway] hereby agrees to defend, indemnify and hold harmless [PCI], [TCR], Owner, and all other parties who may use the Scaffold, and their respective officers, directors, employees and agents, from and against any and all claim, loss, damage, cost or other liability whatsoever, including attorneys' fees, for property damage or personal injury as may be incurred or threatened and which may be caused or alleged to be caused by the supply, erection and maintenance of the Scaffold by [Safway] (including but not limited to claims of [PCI's] or [Safway's] employees).  [Safway] will defend, indemnify and hold harmless the indemnities only to the extent of [Safway's] negligence for any claim, damage, suit or demand arising from an occurrence during any time that [Safway's] employees are not actively involved in erection or dismantlement and while any scaffold, stage or other materials furnished by [Safway] are not under the direct control of [Safway].

Sabido Decl. Ex. F at 4.

Continental Casualty Insurance Company ("Continental") issued a CGL policy to PCI which covers the time at issue here ("Continental Policy").

Zurich American Insurance Company ("Zurich") issued a CGL insurance policy to Safway which covers the time at issue here ("Zurich Policy") and which has a $1 million self-insured retention ("SIR").  Safway has not exhausted the SIR.

Safway provided PCI an ACORD Certificate of Liability Insurance which states:  "The following are listed as Additional Insured with respect to work performed for them by the Named

Page 4 - OPINION AND ORDER

Insured:  PERFORMANCE CONTRACTING; TRAMMELL CROW RESIDENTIAL."  Denton
Decl. Ex. C.

On September 29, 2003, Johnny Bais, a Safway employee, fell 50 feet while erecting
scaffolding at the Merrick.  Safway notified Zurich of Bais's fall on October 3, 2003.  On
August 16, 2005, Bais filed an Amended Complaint ("Bais") in Multnomah County Circuit
Court alleging claims resulting from his fall.

Bais alleged he was injured due to TCR's and PCI's negligence in failing to maintain a
safe work area, failing to install anchor points, failing to require or ensure that Safway
implemented a fall protection plan or a safety monitoring system, failing to ensure that Safway
employees used some type of fall protection, failing to adequately inspect and supervise the work
of Safway's employees, and allowing Safway employees to erect scaffolding without fall
protection.  Murphy Aff. Ex. G at 13 (Amended Complaint ¶ 50).  Bais also alleged claims
against Safway.

In September 2005, TCR tendered defense of Bais to PCI and Safway.  Safway denied the
tender.  Neither PCI nor its insurer, Continental, accepted the tender.  TCR retained counsel to
defend Bais.

PCI tendered its defense in Bais to Safway.  On October 5, 2005, Safway's defense
counsel wrote to PCI's defense counsel, rejecting PCI's tender.

On May 22, 2006, Continental agreed to participate in TCR's defense under a reservation
of rights.

On August 4, 2006, Continental wrote to the broker of the Zurich Policy, tendering
Continental's defense of Bais.  This letter was forwarded to Zurich a week later.

Safway was dismissed in <u>Bais</u> when its motion for summary judgment was granted. After the trial in <u>Bais</u>, a Multnomah County jury decided on August 31, 2006 that neither PCI nor TCR was liable for Johnny Bais's injuries. The Oregon Court of Appeals affirmed without opinion the defense verdict in favor of PCI and TCR. <u>Bais v. Trammel Crow Co.</u>, No. A134134, 222 Or. App. 526, 195 P.3d 492 (Oct. 1, 2008). Plaintiff did not appeal the Safway dismissal. As of August 29, 2008, Continental paid all of PCI's defense costs, $254,580.59, but only a portion of TCR's defense costs, paying $104,672.50.

Continental filed this action in June 2007. In July 2007, TCR tendered its defense in <u>Bais</u> to Zurich, which has not responded.

## LEGAL STANDARDS

### I.    Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. <u>Universal Health Services, Inc. v. Thompson</u>, 363 F.3d 1013, 1019 (9th Cir. 2004).

### II.    Insurance Coverage Standards

The interpretation of an insurance policy is a question of law. <u>Hoffman Construction Co. v. Fred S. James & Co.</u>, 313 Or. 464, 469, 836 P.2d 703 (1992). If technical words, local

phrases, or terms of art are used, however, extrinsic evidence showing their meaning is properly admitted and the question becomes one of fact. Timberline Equip. v. St. Paul Fire and Marine Insurance, 281 Or. 639, 643, 576 P.2d 1244 (1978). The primary rule of the construction of insurance contracts is to determine the intent of the parties based on the terms and conditions of the policy. Hoffman, 313 Or. at 469. If a term is not defined in the policy, the first method of interpretation is the plain meaning of the term. If there are two or more plausible interpretations of a term, the court should examine them in light of the particular context in which the term is used in the policy and the broader context of the policy as a whole. If the competing plausible interpretations are still reasonable, the term is ambiguous and must be interpreted against the drafter of the language, generally the insurer. Id. at 470-75. The court has noted in dicta, however, that if a term remains ambiguous, there might be a factual issue on the parties' intent which would make summary judgment inappropriate. Interstate Fire v. Archdiocese of Portland, 318 Or. 110, 118, 864 P.2d 346 (1993). This dicta has caused confusion: "We understand it, however, to refer to circumstances in which, because the parties have proffered conflicting versions of the circumstances surrounding the policy's negotiation and formation, the trier of fact must resolve those factual disputes and, in so doing, determine the parties' true intent with respect to the ambiguous policy language." Farmers Ins. Co. v. Munson, 145 Or. App. 512, 521 n.7, 930 P.2d 878 (1996).

## DISCUSSION

Continental seeks a declaratory judgment that: (1) Zurich and/or Safway are obligated to reimburse Continental for all costs it paid on behalf of PCI and TCR in relation to the underlying action and subsequent appeal; and (2) under the contract between Safway and PCI, Zurich's

and/or Safway's obligations to provide a defense to PCI and TCR are primary to any such obligation of Continental. Continental also alleges a claim for contribution or equitable allocation against Zurich and Safway and an alternative claim for breach of the contract in which Safway agreed with PCI to obtain primary coverage for PCI and TCR. Continental alleges that under the provisions of its policy covering PCI and the Safway/PCI contract, Continental can enforce Safway's contractual promise to PCI.

TCR alleges counterclaims against Continental for a declaratory judgment that Continental has a duty to defend and indemnify TCR and for breach of contract as an additional insured under the policy between Continental and PCI. TCR alleges crossclaims against Zurich for a declaratory judgment that Zurich has the duty to defend and indemnify TCR and for breach of contract as an additional insured under the insurance policy between Zurich and Safway. Finally, TCR alleges a crossclaim as a third-party beneficiary against Safway for breach of the PCI/Safway subcontract for failing to obtain insurance coverage for TCR.

I.    Effect of the Workers' Compensation Bar

Safway contends that the exclusivity provision, or bar, of Oregon's Workers' Compensation Law, ORS 656.018, protects it from liability to Continental and TCR. Safway further argues that the bar also voids the indemnity provision in the PCI/Safway subcontract. It notes that Tudor Ins. Co. v. Howard S. Wright Constr. Co., No. CV04-480-ST, 2005 WL 425464 (D. Or. Feb. 18, 2005), and Richardson v. Howard S. Wright Constr. Co., No. CV05-1419-ST, 2007 WL 1467411 (D. Or. May 18, 2007), allowed recovery from the employer's insurer, and not directly from the employer, because of the bar.

Continental cites Tudor and Richardson for the proposition that ORS 656.018 does not alter an employer's insurer's obligations under an additional insured endorsement to defend and indemnify a third-party with respect to claims brought by an injured employee. According to Continental, the bar only applies to Safway's liability as an employer, not as an insurer under the SIR.

Oregon's Workers' Compensation Law provides:

> The liability of every employer who satisfies the duty required by ORS 656.017 (1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter.

ORS 656.018(1)(a).

The discussion of the workers' compensation bar in Tudor and Richardson is dicta. The cases primarily discuss the Lamb-Weston rule and the effect of ORS 30.140, respectively. Two other cases come much closer to the mark.

The workers' compensation bar voids any indemnity agreements entered into by Safway when related to the injury of a Safway employee. Roberts v. Emerick Constr. Co., 73 Or. App. 29, 32, 697 P.2d 985 (1985). According to the Oregon courts, however, agreements to purchase insurance are distinguishable from indemnity agreements, in the context of the Workers' Compensation Law. Montgomery Elevator Co. v. Tuality Cmty. Hosp., 101 Or. App. 299, 302, 790 P.2d 1148 (1990). Consequently, agreements to purchase insurance are not voided by the

workers' compensation bar and the employer is liable for damages resulting from a breach of

contract. <u>Id.</u>

> The genesis of plaintiff's claim lies in defendant's failure to keep its part of a bargain by purchasing insurance, not in the infortuitous occurrence of an injury to defendant's employe. The parties' contract was intended to protect the non-employer from liability for tort claims rather than to relieve the employer from its responsibility to provide workers' compensation coverage.

> Had plaintiff known before anyone was injured that defendant had not purchased the insurance as it agreed, plaintiff could have sued for specific performance or purchased the insurance itself and then sued defendant for the cost of the policy. Plaintiff's claim against defendant does not fall under the statutory proscription, because it does not "arise out of compensable injuries" but, rather, arises out of a breach of contract.

> . . . .

> Although, under the facts, damages that plaintiff seeks happen to be the same as if there had been an indemnity agreement, the coincidence of the measure of damages does not mean that the contract to provide insurance is the equivalent of an indemnity agreement. It is only because an injury intervened between defendant's breach of contract and plaintiff's awareness of that fact that the amount plaintiff seeks is equivalent to the settlement and the defense costs.

<u>Id.</u> at 302-04.

Based on these cases, I conclude that the indemnity provision in the PCI/Safway contract

is void, when it concerns the injury of a Safway employee, but the provision requiring Safway to

purchase insurance is enforceable.

II.    <u>Effect of the SIR in Safway's Policy with Zurich</u>

The Zurich Policy contains a self-insured retention ("SIR") which requires Safway to pay

all losses of up to $1 million per claim:

> The Self Insured Retention amount shown in this schedule, below, shall be your obligation for payment of all "loss(es)", including "claim expenses" until the Self Insured Retention is exhausted by such payments. The Self Insured Retention amount is the most you will pay for Self Insured Retention amounts

arising out of any "claim", regardless of the number of persons or organizations making "claims(s)" or bringing suits. The Self Insured Retention amount applies to those "loss(es)" and "claim expense(s)" that would be covered by this Policy in the absence of this endorsement.

Sabido Decl. Ex. E at 6.

A. In the event that you refuse to respond to obligations for the payment of Self Insured Retention amounts for any reason, the insurance provided by this policy shall not make payments for you, nor in any event shall we be required to substitute for you as respects your responsibility for payment of these Self Insured Retention amounts.

B. We shall be liable only for the amount of "loss(es") including "claim expense(s)" in excess of the Self Insured Retention amounts as applicable, shown in the Schedule above of this endorsement, up to the applicable Limits of Liability shown in the Declarations.

Id. at 8.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

Id. at 9.

Continental argues that the SIR has no effect on Zurich's obligation to defend PCI because the SIR applies only to the named insured and not to additional insureds. Continental also contends that when read in its entirety, the Zurich Policy can only be construed to require Zurich to provide first-dollar insurance to additional insureds. In support, Continental relies on the endorsements for additional insureds which state that Zurich will provide insurance to additional insureds that is primary and noncontributory with any other insurance available to additional insureds. Continental argues that this is the only sensible interpretation because additional insureds would have no knowledge of the SIR or Zurich's bargain with Safway.

Zurich disagrees, contending that it is only liable for losses and claim expenses in excess of the SIR. According to Zurich, Safway must pay for all losses and expenses until the SIR is exhausted, including coverage included in the policy by the additional insured endorsements. Since the amount in dispute here–the defense costs incurred on behalf of PCI and TCR in <u>Bais</u>–is well under the $1 million SIR, Zurich argues that it is entitled to summary judgment against Continental and TCR.

Continental's arguments are not persuasive. "Your" obligation refers to Safway's obligation as the named insured to pay for the first million dollars in losses and claim expenses. The language cannot be interpreted to mean that Zurich must pay before the SIR is exhausted. I also disagree with Continental's argument that the SIR does not apply to PCI because PCI is not the named insured. The SIR applies to all losses, whether they are incurred by the named insured or by any other insureds.

It is undisputed that the SIR is not exhausted and is not expected to be exhausted. Therefore, Zurich has no obligation to make any payments towards the defense costs. Accordingly, I grant summary judgment and dismiss all claims alleged against Zurich.

III.     <u>Effect of ORS 30.140 on Coverage for Upstream Contractors</u>

The parties dispute the effect of ORS 30.140 on Safway's contractual promise to obtain insurance coverage for TCR and PCI. The statute states, in relevant part:

Certain indemnification provisions in construction agreement void.

(1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.

(2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors.

(3) As used in this section, "construction agreement" means any written agreement for the planning, design, construction, alteration, repair, improvement or maintenance of any building, highway, road excavation or other structure, project, development or improvement attached to real estate including moving, demolition or tunneling in connection therewith.

ORS 30.140(1)-(3).

Continental argues that ORS 30.140 does not void agreements to procure insurance for another so long as the agreement does not extend beyond the indemnitor's fault. It cites two decisions from this court concerning upstream contractors seeking additional insured coverage from the subcontractor's insurer: Tudor and Richardson. Continental interprets the PCI/Safway subcontract to limit the liability in conformance with ORS 30.140. Continental also argues that ORS 30.140 only applies to agreements to indemnify, not to agreements to provide a defense.

TCR raises the same general arguments as Continental, contending that nothing in the PCI/Safway subcontract required Safway to obtain insurance covering the negligence or fault of PCI or TCR. TCR adds that even if the indemnity provision violated ORS 30.140, the statute only renders the offending part of the agreement unenforceable–it does not void the entire agreement to relieve Zurich of its insurance obligations.

Zurich relies on Walsh Construction Co. v. Mutual of Enumclaw, 338 Or. 1, 6-10, 104 P.3d 1146 (2005), to argue that ORS 30.140 voids Safway's promise to procure insurance for PCI and TCR. According to Zurich, the PCI/Safway subcontract obligated Safway to obtain insurance for PCI and TCR for injury caused in whole or part by PCI or TCR, something which

Page 13 - OPINION AND ORDER

ORS 30.140 prohibits.  Zurich argues that <u>Richardson</u> and <u>Tudor</u> were wrongly decided because the issue under ORS 30.140 is whether a provision in the contract requires the subcontractor to insure the general contractor against the general's own fault, not whether a particular claim alleges that the general itself was at fault.

The cited cases make it clear that the analysis is totally dependent on interpretation of the contract language.  I agree with the general method of analysis in <u>Richardson</u>, with the court first comparing the contract provision with the statutory prohibitions.  If the contract is not void, the court then examines the allegations in the complaint to determine if they trigger the duty to defend or indemnify.

We also know from <u>Walsh</u> that ORS 30.140 applies equally to contracts to procure insurance as well as indemnity agreements.  <u>Walsh</u>, 338 Or. at 9.  Moreover, because we are considering the injury of a Safway employee, I concluded above that the indemnity provision in the PCI/Safway contract is void, but the provision requiring Safway to purchase insurance is enforceable.  Thus, I will examine the agreement to purchase insurance.

Safway contracted to maintain and pay for CGL coverage of at least $1 million per occurrence and $2 million aggregate, with PCI and TCR named as additional insureds.  Sabido Decl. Ex. F at 2. The PCI/Safway subcontract states:

> Prior to beginning work, [Safway] shall provide [PCI] with evidence of such insurance through a certificate on the standard ACORD form and the agreement and endorsement(s) of its insurance carrier to the effect that such insurance:  (a) is in effect; (b) is occurrence based and not a claims made type policy; (c) will not be canceled or changed without thirty (30) days prior written notice to [PCI]; (d) that [PCI], [TCR], Owner and its architect are named additional insureds; (e) that such coverage is primary rather than contributory to any insurance provided by Owner, [TCR], or [PCI]; and (f) that such carrier waives subrogation against [PCI], [TCR], Owner and its architect and their respective agents or employees, with respect to any loss covered by the insurance.

Page 14 - OPINION AND ORDER

Id.

The agreement to purchase insurance is silent on whether Safway must purchase insurance to cover the fault of PCI and TCR.  The void indemnification provision in the PCI/Safway contract, however, does limit Safway's indemnification to Safway's "negligence for any claim, damage, suit or demand arising from an occurrence during any time that [Safway's] employees are not actively involved in erection or dismantlement and while any scaffold, stage or other materials furnished by [Safway] are not under the direct control of [Safway]."  Sabido Decl. Ex. F at 4.

Although the indemnity provision is void in this instance, it does provide evidence of the parties' intent when forming the contract.  See Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997) (the four corners of a contract are examined to determine the meaning of terms in context).  Because the indemnity provision limited Safway's liability in a way that comports with ORS 30.140, I conclude that Safway and PCI also intended Safway's obligation to purchase insurance to be limited to damage caused by Safway's own fault.  Thus, the provision to purchase insurance is not voided by ORS 30.140.

V.    Continental's Breach of Contract Claims against Safway

Continental contends that if neither Zurich nor Safway owed PCI a defense in Bais, then Safway breached its contract with PCI to provide insurance covering PCI for liability arising out of Safway's operations.  Continental contends that it is entitled to recover defense costs it paid on behalf of TCR and PCI because of Safway's breach.  Continental argues that the workers' compensation bar does not protect Safway from a breach of contract claim.  Finally, Continental argues that Safway did not only agree to name PCI and TCR as additional insureds, it agreed to

maintain, enforce, and pay for insurance covering them. Continental contends that the court must interpret this provision to require Safway to obtain meaningful, actual insurance protection for PCI and TCR.

In addition to the workers' compensation bar, Safway argues that it performed its obligations under the contract with PCI by naming PCI and TCR as additional insureds on the Zurich Policy. According to Safway, it is under no contractual obligation to defend PCI or TCR up to its SIR limit. Safway also argues that Continental has no standing to bring a breach of contract claim because it is not a party to a contract with Safway, not a beneficiary of another's contract with Safway, and not PCI's subrogee.

Continental claims that this argument misses the point and that it does not argue that it is a third-party beneficiary of the PCI/Safway subcontract. According to Continental, it stands in PCI's and TCR's shoes to the extent of Continental's payment of defense costs. As a subrogee of PCI and TCR, Continental argues it is entitled under Oregon law to seek recoupment of the defense costs on either a legal or equitable basis.

The first issue is whether Continental can bring a breach of contract claim against Safway based on the PCI/Safway contract.

Subrogation allows an insurer to recover what it has paid by "standing in the shoes of the insured and pursuing a claim against the wrongdoer." Koch v. Spann, 193 Or. App. 608, 612, 92 P.3d 146 (2004). The subrogated party, namely the insurer, "acquires precisely the same rights as the party for whom it substitutes, and no more than that." Id. Continental, as an insurer who has paid claims, is subrogated to the rights of PCI and can thus maintain a claim against Safway for breach of contract.

I am also unpersuaded by Safway's argument that it fulfilled its contractual obligation to PCI by having it named as an additional insured. Safway contracted to maintain and pay for CGL coverage of at least $1 million per occurrence and $2 million aggregate. Safway did not obtain this amount of insurance–with the $1 million SIR, Safway's performance of the contract was completely deficient.

The next issue is the amount of damages for the breach of contract claim, which would be the amount that Zurich would have paid if its policy with Safway did not contain the SIR. This requires me first to determine if the Bais allegations trigger Zurich's duty to defend and next to determine if Zurich would have paid the entire amount or whether Continental also would have paid some of the Bais defense costs.

PCI would have been an additional insured under the Zurich policy under the Additional Insured–Owners, Lessees or Contractors endorsement, CG 20 10 10 01, which amends the definition of insured to include organizations shown in the schedule, where required by written contract. As explained above, I am unpersuaded by Zurich's argument based on ORS 30.140.

An insurer has a duty to defend an action against its insured if the claim stated in the complaint could, without amendment, impose liability for conduct covered by the policy. Ledford v. Gutoski, 319 Or. 397, 399-400, 877 P.2d 80 (1994). The court looks only at the complaint and the policy. The insurer has a duty to defend if the complaint provides any basis for coverage, even if the complaint also alleges conduct outside the coverage of the policy. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured. Id.

Page 17 - OPINION AND ORDER

Bais alleged he was injured due to TCR's and PCI's negligence in failing to maintain a safe work area, failing to install anchor points, failing to require or ensure that Safway implemented a fall protection plan or a safety monitoring system, failing to ensure that Safway employees used some type of fall protection, failing to adequately inspect and supervise the work of Safway's employees, and allowing Safway employees to erect scaffolding without fall protection.  Murphy Aff. Ex. G at 13 (Amended Complaint ¶ 50).

The insuring agreement of the Zurich policy states that the policy will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."  Sabido Decl. Ex. E at 9.  The insurance applies to bodily injury only if it is caused by an "occurrence" that takes place in the "coverage territory."  Id.  "Bodily injury" means any bodily injury, sickness or disease sustained by a person and "coverage territory" includes the United States.  Id. at 13.  An "occurrence" is an accident.  Denton Second Decl. Ex. D at 18.  I conclude that the Bais allegations triggered Zurich's duty to defend.

The last issue is whether Zurich would have paid the defense costs alone or whether Continental would have contributed.

The PCI/Safway contract required Safway to obtain insurance that is primary rather than contributory to any insurance provided by PCI.  The Additional Insured–Owners, Lessees or Contractors endorsement to the Zurich policy, CG 20 10 10 01, states "insurance is [sic] afforded to additional insured shall be primary and noncontributory with any other insurance available to additional insured if required by written contract."  Sabido Decl. Ex. E at 16.  I am unpersuaded by Zurich's argument that the Continental and Old Republic (insurer for TCR) policies are the primary policies because they would apply but for the fortuitous event of other insurance

covering the same loss, namely, the Zurich policy.  The purchase of the Zurich policy was not a fortuitous event.  The policy was purchased as part of the conventional scheme used in the construction industry to relieve contractors from having to pay for damages for which they are liable only vicariously.  I also am not applying the rule in <u>Lamb-Weston v. Ore. Auto. Ins. Co.</u>, 219 Or. 110, 341 P.2d 110 (1959), because I am not faced with dueling "other insurance" clauses.  Here, the Zurich policy states that under the circumstances, it is primary and noncontributory.

I find that the Zurich policy would have paid the entire <u>Bais</u> defense costs incurred by PCI, $254,580.59, if the policy did not contain the SIR.  This amount is thus the amount of damages caused by Safway's breach of contract to purchase particular insurance coverage for PCI.  I grant summary judgment and award Continental $254,580.59 from Safway to compensate Continental for the amount it paid for PCI's defense.

Continental also paid $104,672.50, a portion of TCR's defense costs.  Safway was obligated under the PCI/Safway contract to purchase the same insurance for TCR as for PCI. The analysis does not differ.  Thus, I grant summary judgment and direct Safway to pay Continental $104,672.50 to compensate Continental for the amount it paid for TCR's defense.

VI.    <u>TCR's Claims</u>

A.    <u>TCR's Crossclaim against Safway</u>

TCR alleges a crossclaim as a third-party beneficiary against Safway for breach of its contract with PCI for failing to obtain insurance coverage for TCR.

In the event the court determines that Zurich does not have a duty to defend TCR, TCR argues that Safway breached the PCI/Safway subcontract to procure insurance for the benefit of

TCR by having TCR named as an additional insured on a primary coverage basis.  To establish standing to bring the contract claim, TCR contends that it is a third-party beneficiary to the PCI/Safway subcontract because the subcontract shows the intent of Safway to give TCR the benefit of its promise to obtain insurance for TCR's benefit.  TCR alternatively contends that it is a third-party beneficiary under a creditor beneficiary theory because Safway agreed to fulfill PCI's duty to name TCR as an additional insured.

Safway argues it is not liable to TCR because of the workers' compensation bar and because TCR is not a third-party beneficiary of the PCI/Safway subcontract and consequently cannot enforce the contract against Safway.  Alternatively, Safway contends that it complied with its contractual obligations to name TCR as an additional insured.

The TCR/PCI contract required PCI to have all of its subcontractors name TCR as an additional insured on the subcontractors' CGL policies and that the insurance should be primary. The PCI/Safway contract obligated Safway to purchase the same insurance naming TCR as an additional insured as Safway was obligated to purchase to benefit PCI.  Safway breached the contract to purchase insurance naming TCR just as Safway breached the contract to purchase insurance naming PCI.  The only issue raised by this claim which I have not already addressed is whether TCR has standing as a third-party beneficiary to allege a breach of contract claim against Safway.

To be a creditor beneficiary, "the performance . . . by [the promisor] must be to 'satisfy an actual or supposed or asserted duty of the promisee . . . to the [plaintiff]." Sisters of St. Joseph v. Russell, 318 Or. 370, 375, 867 P.2d 1377 (1994).  Here, Safway was to satisfy a duty of PCI to

name TCR as an additional insured.  Thus, TCR is a third-party creditor beneficiary to the

PCI/Safway contract and may bring a claim for breach of that contract.

Accordingly, I find that Safway breached its contract with PCI to purchase insurance for

the benefit of TCR, that TCR is a third-party beneficiary to that contract, and that Safway is

liable to TCR for the defense costs TCR incurred in <u>Bais</u>, minus the amount that Continental

already reimbursed TCR.

B.    <u>TCR's Counterclaims against Continental</u>

TCR alleges counterclaims against Continental for a declaratory judgment that

Continental has a duty to defend and indemnify TCR and for breach of contract as an additional

insured under the policy between Continental and PCI.

As explained above, the fault here lies with Safway for not purchasing the insurance it

was contractually obligated to purchase.  Continental had no duty to defend TCR.  I grant

summary judgment and dismiss TCR's counterclaims alleged against Continental.

C.    <u>TCR's Crossclaims against Zurich</u>

TCR alleges crossclaims against Zurich for a declaratory judgment that Zurich has the

duty to defend and indemnify TCR and for breach of contract as an additional insured under the

insurance policy between Zurich and Safway.

For the reasons stated above concerning the effect of the SIR, Zurich had no duty to

defend TCR.  I grant summary judgment and dismiss TCR's crossclaims alleged against Zurich.

VII.    <u>Attorney Fees</u>

Continental and TCR contend that under ORS 742.061, they are entitled to recover their

attorney fees incurred in this action.

The statute states:

>        Recovery of attorney fees in action on policy or contractor's bond.
> (1) Except as otherwise provided in subsections (2) and (3) of this section [actions
> to recover PIP or uninsured motorist ("UM") benefits], if settlement is not made
> within six months from the date proof of loss is filed with an insurer and an action
> is brought in any court of this state upon any policy of insurance of any kind or
> nature, and the plaintiff's recovery exceeds the amount of any tender made by the
> defendant in such action, a reasonable amount to be fixed by the court as attorney
> fees shall be taxed as part of the costs of the action and any appeal thereon.

ORS 742.061.

Recovery against Safway in this action is under a breach of contract theory.  I am aware of only one authority applying ORS 742.061 against any party other than an insurer.  In <u>Haynes v. Tri-Country Metro.</u>, 337 Or. 659, 103 P.3d 101 (2004), the court concluded that TriMet was an insurer subject to ORS 742.061 in a case in which a passenger was injured on a bus and prevailed in a claim against TriMet.  The court noted that TriMet chose to self-insure and adopted an ordinance in which it agreed to compensate injured passengers for injuries caused by uninsured motorists in accordance with the state UM statute, ORS 742.500 to ORS 742.510.  The UM statute states that the "insurer will pay all sums which the insured . . . shall be legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle." ORS 742.504(1)(a).  Because TriMet agreed to compensate injured passengers under this statute, the court concluded that it was an insurer and also subject to the attorney fees provision, ORS 742.061.  <u>Id.</u> at 666.

The <u>Haynes</u> reasoning, based on TriMet's agreement to compensate under the UM statute, does not apply to Safway's situation.  The SIR in the Zurich policy does not make Safway an insurer.  I conclude that attorney fees are not available under this statute.  If any party

believes that it is entitled to attorney fees under another theory, such as a contractual obligation, the party may move for attorney fees after judgment is entered.

## CONCLUSION

Plaintiff's Motion for Summary Judgment (#52), Defendant Zurich American Insurance Company's Motions for Summary Judgment and Alternative Motions for Partial Summary Judgment (#58), and Defendant TCR's Motion for Summary Judgment (#64) are granted as explained above.  Defendant Safway Services, Inc.'s Motions for Summary Judgment (#68) is denied.  I ask the parties to confer on the form of a judgment and either jointly submit a judgment by February 27, 2009, or submit their separate proposals by that date with an explanation of the issues between them on the form.

IT IS SO ORDERED.

Dated this _____29th_____ day of January, 2009.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge

Page 23 - OPINION AND ORDER