IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CONTINENTAL CASUALTY INSURANCE COMPANY, an Illinois corporation,<br><br>         Plaintiff,<br><br>  vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, TCR PACIFIC NORTHWEST CONSTRUCTION 2002 LIMITED PARTNERSHIP, a foreign limited partnership, SAFWAY SERVICE, INC., a Delaware corporation,<br><br>         Defendants. | Civil Case No. 07-913-KI<br><br>OPINION AND ORDER |

    David E. Prange
    Aaron C. Denton
    Prange Law Group LLC
    111 Southwest Fifth Avenue, Suite 2120
    Portland, Oregon  97204

         Attorneys for Continental Casualty Insurance Company

Page 1 - OPINION AND ORDER

James P. Murphy
Lybeck Murphy, LLP
7525 SE 24th Street, Suite 500
Mercer Island, Washington  98040-2334

    Attorney for Defendant TCR Pacific Northwest Construction 2002
        Limited Partnership

John L. Langslet
Justin M. Thorp
Martin Bischoff Templeton Langslet & Hoffman, LLP
888 SW Fifth Avenue, Suite 900
Portland, Oregon  97204

    Attorneys for Defendant Safway Services, Inc.

Thomas W. Brown
Robert E. Sabido
Cosgrave Vergeer Kester, LLP
805 SW Broadway, 8th Floor
Portland , Oregon  97205

    Attorneys for Defendant Zurich American Insurance Company

KING, Judge:

This is an insurance coverage case over the defense costs in an underlying action in which an employee fell and was severely injured during a construction project. Before the court are motions for prejudgment interest and attorney fees.

## BACKGROUND

I take the following background information from the summary judgment opinion.

TCR Pacific Northwest Construction 2002 Limited Partnership ("TCR") was the general contractor on an apartment complex project. TCR contracted with Performance Contracting, Inc. ("PCI") for framing and exterior stucco work at the project. PCI contracted with Safway Services, Inc. ("Safway") to erect scaffolding at the project.

Page 2 - OPINION AND ORDER

Continental Casualty Insurance Company ("Continental") issued a commercial general liability ("CGL") policy to PCI. Safway contracted to maintain and pay for CGL coverage of at least $1 million per occurrence and $2 million aggregate, with PCI and TCR named as additional insureds. Zurich American Insurance Company issued a CGL insurance policy to Safway which had a $1 million self-insured retention. The injured employee sued TCR, PCI, and Safway, his employer.

In prior rulings, I held: (1) Continental, as an insurer who has paid claims, is subrogated to the rights of PCI; (2) Safway breached its contract to purchase insurance and had to compensate Continental for the amount Continental paid for TCR's and PCI's defense; (3) TCR is a third-party creditor beneficiary to the PCI/Safway contract; (4) Safway is liable to TCR for the defense costs TCR incurred in the underlying action, minus the amount that Continental already reimbursed TCR; (5) Continental had the obligation to pay all of TCR's defense costs and thus breached the insurance contract when it paid only half; and (6) attorney fees are not available from Safway under ORS 742.061.

## DISCUSSION

I.    <u>Attorney Fees</u>

Continental and TCR each seek attorney fees, $163,770.00 and $216,484.50 respectively, under several theories.

Federal courts in diversity actions apply state law with regard to the allowance or disallowance of attorney fees. <u>Canada Life Assurance Co. v. LaPeter</u>, 563 F.3d 837, 847 (9th Cir. 2009).

A.     Application of ORS 742.061

The statute states:

> Recovery of attorney fees in action on policy or contractor's bond. (1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.
>
> (2) Subsection (1) of this section does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
>
> (a) The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and
>
> (b) The insurer has consented to submit the case to binding arbitration.
>
> (3) Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
>
> (a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and
>
> (b) The insurer has consented to submit the case to binding arbitration.

ORS 742.061.

TCR seeks attorney fees from Continental under the statute. TCR contends that it provided a proof of loss on June 18, 2007 when it advised Continental of TCR's entitlement to a complete defense under the PCI policy and again on September 7, 2007 when TCR filed and served its answer in this action asserting its counterclaims for breach of insurance contract against Continental. Since Continental made no offer to pay TCR's unreimbursed defense costs

prior to the court's February 23, 2009 ruling in TCR's favor, TCR claims that it is entitled to attorney fees under the statute.

First, Continental notes that it made the initial tender to TCR in October 2006, well before TCR's alleged proof of loss on June 18, 2007, with the result that ORS 742.061 has not been triggered.

A complaint, or in this case, an answer, may serve as the proof of loss under ORS 742.061, thus triggering the six-month period in which the insurer must make a tender to cut off attorney fees. Dockins v. State Farm Ins. Co., 329 Or. 20, 27, 985 P.2d 796 (1999). I see no relevance to the fact that Continental made a substantial payment to TCR in October 2006. Continental never agreed to pay all of the defense costs in the underlying case. ORS 742.061 was triggered when TCR filed its answer in September 2007, if not earlier. Continental did not settle within six months of that date and TCR is recovering more in this action than Continental ever tendered.

Second, Continental claims that under subsection (2) of ORS 742.061, the statute does not apply if the insurer acknowledges that it has a coverage obligation and disputes only the extent of the obligation. Acknowledging that the statute pertains to PIP benefits, Continental argues that there is no reason not to apply the exception here.

The legislature made very specific exceptions for PIP and UM benefits, neither of which is at issue here. I cannot stretch the statutory exceptions to cover Continental's situation.

Third, Continental claims that ORS 742.061 does not justify a fee award where, as here, an insurer and its insured are involved in good faith negotiations about the extent of the insurer's

Page 5 - OPINION AND ORDER

obligation. Continental relies on the fact that it provided a partial defense to TCR pending the court's ruling.

Continental relies on <u>Gore v. Prudential Insurance Company of America</u>, 265 Or. 12, 507 P.2d 20 (1973), an interpleader action in which the insurer was willing to fully pay benefits from a life insurance policy but was faced with multiple possible beneficiaries. The court concluded that the prevailing plaintiff was not entitled to attorney fees because the insurer did not contend that it had no liability under the policy. <u>Id.</u> at 16. Later cases have expressly interpreted <u>Gore</u> in a way that undercuts Continental's argument:

> Thus, the defendant insurer in <u>Gore</u> effectively tendered the full amount of the policy and did not affirmatively dispute the plaintiff's entitlement to a complete recovery, if the plaintiff was, in fact, the proper beneficiary. Nothing in <u>Gore</u> suggests that ORS 742.061 does not apply where the insurer does dispute an insured's entitlement to a complete recovery and the insured's ultimate recovery exceeds the insurer's tender.

<u>Douglass v. Allstate Ins. Co.</u>, 152 Or. App. 216, 221, 953 P.2d 770 (1998).

The <u>Gore</u> insurer did not try to negotiate to limit its liability, as is the case with Continental, which disputed TCR's entitlement to a complete recovery.

Continental also relies on <u>Kricar, Inc. v. General Accident, Fire and Life Assurance Corporation, Ltd.</u>, 542 F.2d 1135, 1137 (9th Cir. 1976), in which the court refused to award attorney fees under a predecessor to the statute because the court found the insurer did not refuse to settle in bad faith. I agree with TCR that <u>Kricar</u>'s holding is inconsistent with settled Oregon law. "Recovery of attorney fees under our statute is not defeated by the insurer's good faith in failing to settle. The statute is compensatory, not penal." <u>Hardware Mut. Cas. v. Farmers Ins.</u>, 256 Or. 599, 612, 474 P.2d 316 (1970).

I am unpersuaded by any of Continental's arguments and hold that TCR is entitled to attorney fees from Continental under ORS 742.061.

Continental contends that even if TCR's claim against Continental has merit, the court should require Safway to pay all of TCR's fees because that equitable result is consistent with the court's prior rulings. Additionally, if the court holds that both Continental and Safway owe TCR's attorney fees, Continental asks that the court equitably allocate responsibility between the two, keeping in mind that Safway's breach of contract triggered the litigation.

Although Safway's breach of contract was the impetus for this dispute, Continental made a decision not to fully cover TCR's defense costs. I conclude that an award of fees against Continental is not unjust.

Finally, Continental argues that it should only be obligated for fees TCR incurred prosecuting its claim against Continental and not for fees TCR incurred litigating against Safway and Zurich.

If a party prevails in an action that has a claim for which attorney fees are authorized and a claim for which fees are not authorized, the court must apportion the fees incurred for each claim unless the claims involve common legal issues. Bennett v. Baugh, 164 Or. App. 243, 248, 990 P.2d 917 (1999).

In reviewing TCR's 20-page memorandum supporting its motion for summary judgment, TCR used one page arguing for its breach of contract claim against Safway and over three pages arguing for its claim against Zurich based on the additional insured endorsements in that policy. TCR devoted more than half of its response brief to arguments raised by Zurich and Safway. As demonstrated by these briefs, there were issues raised by the various parties that did not overlap

Page 7 - OPINION AND ORDER

with another party's issues. Accordingly, I hold that TCR must apportion its request for fees, with Continental only liable for fees TCR incurred for legal work on the claims and issues which relate to Continental.

      B.    <u>Contractual Attorney Fee Provisions</u>

Continental and TCR seek attorney fees from Safway based on the PCI/Safway contract. Continental and TCR argue that the PCI/Safway contract incorporates the terms of the TCR/PCI contract, including its attorney fees provision.

According to Safway, Continental and TCR are viewing the two contracts too broadly. When interpreted correctly, Safway claims that the attorney fee provision in the TCR/PCI contract only provides fees in disputes relating to the TCR/PCI contract and no other, including subcontracts. Safway maintains that if its subcontract incorporated all terms of the TCR/PCI subcontract, then Safway would be the guarantor of all of PCI's work whether or not such work was within the scope of Safway's subcontract, a notion Safway characterizes as absurd. Safway contends that its subcontract only incorporates the provisions of the TCR/PCI contract that relate to Safway's performance of its work, namely that Safway is required to erect scaffolding in compliance with the project plans and specifications included in the TCR/PCI contract documents.

The PCI/Safway contract states:

> Subcontractor [Safway] acknowledges that it has examined the terms and conditions of the contract between the Contractor [PCI] and Upper Tier Contractor [TCR] (the "Upper Tier Contract") and the contract between the Owner and the Upper Tier Contractor relating to the Project (the "Prime Contract") and hereby agrees to assume towards Owner and Upper Tier Contractor and to perform all of the duties and obligations of Contractor under the Prime Contract and the Upper Tier Contract, (collectively the "Contract Documents") insofar as they relate directly or indirectly to the Work and the

Page 8 - OPINION AND ORDER

performance thereof. This Subcontract and the attached Conditions together with the Exhibits, if any, and together with the Contract Documents and their exhibits and accompanying documents, and the drawings and specifications relating to the Work covered under this Subcontract, constitute the entire agreement between the parties with respect to the matters herein contained. However, this Subcontract shall take precedence over any conflicting provisions in the Contract Documents.

Hamlin Decl. Ex. 1 at 1. Under the Scope of Work term, the PCI/Safway contract states that Safway will erect and dismantle scaffold and gives a few specifications about the scaffold. Id. Ex. 1 at 25.

The TCR/PCI contract states:

(j)   . . . Subcontractor [PCI] shall enter into agreements with Sub-subcontractors performing portions of the Subcontract Work by which the Sub-subcontractor is bound, to the extent of the work to be performed by the Sub-subcontractor, to all obligations and responsibilities which the Subcontractor assumes toward Contractor [TCR] by virtue of the provisions of this Agreement.

Id. Ex. 2 at 8.

32.   ATTORNEYS' FEES. In the event a suit, action, arbitration, or other proceeding of any nature whatsoever, including without limitation any proceeding under the U.S. Bankruptcy Code, is instituted, or the services of an attorney are retained, to interpret or enforce any provision of this Subcontract or with respect to any dispute relating to this Subcontract, the prevailing party shall be entitled to recover from the losing party its attorneys', paralegals', accountants', and other experts' fees and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith. In the event of suit, action, arbitration, or other proceeding, the amount thereof shall be determined by the judge or arbitrator, shall include fees and expenses incurred on any appeal or review, and shall be in addition to all other amounts provided by law.

Id. Ex. 2 at 21-22.

Safway contracted "to assume towards Owner and Upper Tier Contractor and to perform all of the duties and obligations of Contractor under the Prime Contract and the Upper Tier Contract, (collectively the "Contract Documents") insofar as they relate directly or indirectly to

Page 9 - OPINION AND ORDER

the Work and the performance thereof." Id. Ex. 1 at 1. I agree with Safway that the attorney fees clause in the TCR/PCI contract does not fall within the duties and obligations related to Safway's work of erecting the scaffold and consequently is not a term to which Safway agreed. It would have been a simple matter to put an attorney fees clause in the eight pages of Terms and Conditions listed in Attachment C to the PCI/Safway contract, but this was not done. I cannot extend the contractual terms beyond Safway's agreement. Thus, I do not award attorney fees against Safway to either Continental or TCR based on contractual provisions.

      C.      Attorney Fees as Damages

Continental argues that it is entitled to recover the fees from Safway that it incurred litigating with TCR, even in the absence of a statutory or contractual basis, because the fees were triggered by Safway's breach of contract and are a consequential damage of that breach. Under this theory, Continental seeks $27,250 it incurred litigating solely with TCR.

TCR contends that Continental is obligated to pay TCR's fees to litigate its claims against third parties Safway and Zurich because the litigation and resulting fees were a foreseeable consequence of Continental's breach of contract. Turning to Safway, TCR contends that Safway is also obligated for TCR's fees in this action to litigate against Continental and Zurich because the litigation and resulting fees were a foreseeable consequence of Safway's breach of contract to purchase insurance.

Generally, attorney fees are recoverable by the prevailing party only if authorized by statute or contractual provision. Raymond v. Feldmann, 124 Or. App. 543, 546, 863 P.2d 1269 (1993). I acknowledge that attorney fees also can be recovered as damages in an action where a defendant's wrongful conducted involved the plaintiff in earlier litigation with a third party.

Osborne v. Hay, 284 Or. 133, 140, 585 P.2d 674 (1978) (in action for fraud against real estate broker and salesman, the buyer of the property was allowed to recover litigation expenses incurred in earlier unsuccessful action seeking rescission from the seller of the property). But we are well past the point of determining damages in this action–a Judgment has been entered. Thus, I will not award TCR or Continental attorney fees under a damages theory.

II.     Amount of Fees

Although Safway made numerous objections to the reasonableness of the fees sought by Continental and TCR, Continental did not object to the reasonableness of TCR's fees, other than the apportionment argument which I discussed above. I will allow the hourly rate used by TCR in its calculations and ask Continental and TCR to confer on apportioning the fees.

III.    Prejudgment Interest

Continental seeks prejudgment interest of $55,312.69 against Safway on Continental's prior payment of PCI's defense costs and $28,155.92 on Continental's prior partial payment of TCR's defense costs. TCR seeks prejudgment interest on its unreimbursed defense costs, in the amount of $23,460.96 from Continental and $20,220.61 from Safway.

Continental does not respond to TCR's argument. Safway objects, noting that the liability for TCR's defense costs, and the amount, were both disputed. Safway contends that the dates used in the calculations are too early and any prejudgment interest would only accrue from May 30, 2008, the date on which invoices were produced to Safway to establish the costs incurred by TCR.

Prejudgment interest on unliquidated damages in breach of contract cases is appropriate when "(1) the exact amount of damages is either ascertained or readily ascertainable, and (2) the

Page 11 - OPINION AND ORDER

time from which the interest runs is easily ascertained." Sch. Dist. No. 1 v. Mission Ins. Co., 58 Or. App. 692, 714, 650 P.2d 929 (1982) (internal quotation omitted). The allocation of damages between insurers does not preclude an award of prejudgment interest. In Mission Insurance, the interest ran from the date on which the payments were made to private counsel and to settle the case. Id. at 714-15.

The dispute in this case was which entity was responsible to pay the defense costs in the underlying case. That is similar to the allocation issue in Mission Insurance and does not preclude an award of prejudgment interest. Moreover, the interest would accrue from when Continental made the payments and not when invoices were given to Safway to prove the payments.

Continental provided a spreadsheet showing the dates of the payments and the interest that accrued on each separate payment. TCR clarified that even though its original motion had a typographical error, the calculation actually computed the interest from May 30, 2008, as Safway suggested.

I conclude that prejudgment interest should be awarded and that the calculations are correct. Accordingly, I award prejudgment interest in the amounts sought by Continental and TCR.

## CONCLUSION

Plaintiff Continental's FRCP 54 Motion for Attorneys' Fees and Motion for Prejudgment Interest (#138) and Defendant TCR's Motion for Attorneys' Fees (#132) are both granted in part. Defendant TCR's Motion to Fix Prejudgment Interest (#135) is granted. I award Continental prejudgment interest of $55,312.69 against Safway on Continental's prior payment of PCI's

defense costs and $28,155.92 against Safway on Continental's prior partial payment of TCR's defense costs. I award TCR prejudgment interest of $23,460.96 from Continental and $20,220.61 from Safway.

I ask Continental and TCR to confer in an attempt to reach agreement on the amount of attorney fees to be awarded as a result of this opinion and ask all parties to attempt to reach agreement on the form of a Supplemental Judgment. If unable to do that, the parties shall file simultaneous briefs by July 31, 2009 explaining their positions.

IT IS SO ORDERED.

Dated this \_\_\_\_\_29th_____ day of June, 2009.

          /s/ Garr M. King
          Garr M. King
          United States District Judge